UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

Lorraine CARRETHERS                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:16-CV-62-CRS

Mark T. ESPER, SECRETARY,
DEPARTMENT OF THE ARMY                                                                 DEFENDANT

# MEMORANDUM OPINION

## I.      Introduction

This case is before the Court on cross-motions for summary judgment. DNs 57, 58. Both motions are ripe for review. Examining the issues, the Court finds that the Defendant has asserted a legitimate, nondiscriminatory reason for Plaintiff's termination which Plaintiff has not demonstrated to be pretextual, that Plaintiff's whistleblower claim is preempted by Title VII, and that the Merit Systems Protection Board did not exceed its authority. As a result, the Court will grant the Defendant's motion as to all claims in the complaint.

## II.     Legal Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* In undertaking this analysis, the

Court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." FED. R. CIV. P. 56(c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. Factual and Procedural Background

In January 1998, Lorraine Carrethers—a black woman—began working as an IT Specialist for the Department of the Army Human Resources Command for the Adjutant General Directorate at Fort Knox, Kentucky. DN 29 at 2. She was promoted to a supervisory position in 2004, where she remained until her termination in 2014 (which is at issue in this case). *Id.* In 2012, she began reporting to Theresa McGuire and David Cathell. *Id.* Cathell was the Chief of the Operations and Services Division for the Adjutant General Directorate at Fort Knox and served as Carrethers's second-line supervisor. McGuire was the Deputy Chief and oversaw the office when Cathell was absent. According to Carrethers, those two began a pattern of sexual harassment, race-based discrimination, and retaliation leading to her termination.

Carrethers's first complaint came in February 2013, when she complained both informally and formally about McGuire and Cathell to the Army's Equal Employment Opportunity ("EEO") office. DN 57-2. She alleged that they had made offensive comments regarding her job performance, displayed irrational and unpredictable fits of rage toward her, and

retaliated against her for complaining. *Id.* at 2–3. She believed these actions were designed to create a hostile work environment based on her race. Between her informal and formal EEO complaints, Cathell issued Carrethers an adverse counseling statement for failing to follow instructions regarding a purchase order. DN 62-1. This act gave rise to the included retaliation claim. Ultimately, after her termination, the EEO complaint resulted in a settlement and accompanying agreement where, in exchange for a lump sum monetary amount, Carrethers agreed to waive all other remedies and claims related to the EEO matters and accept the settlement as no-fault. DN 13 at 2 (sealed).

Carrethers's next informal complaint came in April 2013. DN 57-4. In it, she alleged that she had been "constantly bullied or harassed" by McGuire since September 2012. *Id.* at 2. Specifically, she alleged that McGuire said "I'll have the SGM[1] do you!" which Carrethers interpreted as a threat of physical violence. *Id.* When another employee expressed concern about Carrethers's health, McGuire allegedly responded "Good. I hope she dies." *Id.* at 3. At another point, Carrethers alleged that she overheard Cathell telling another employee that he intended to harm her. *Id.* Carrethers also says she was concerned because McGuire began asking people where she lived, *Id.* at 2, and Cathell, seeing Carrethers in the parking lot in her car, allegedly remarked "There she is, now I know what her car looks like," *Id.* at 4. For all of these events, Carrethers named other employees as witnesses. However, when asked, those who were interviewed denied that the events occurred. DN 57-10 at 2; DN 57-12 at 2; DN 57-14 at 2–3. Out of an abundance of caution, the military police conducted an investigation. The subsequent report "revealed that there is no probable cause or evidence that corroborates any allegations of a criminal intent" and closed the case as unfounded. DN 57-26 at 6.

---

[1] It is the Court's understanding that SGM in this context refers to an unnamed sergeant major.

Carrethers's final complaint was filed in October 2013 and alleged that McGuire had sexually harassed her. Specifically, she complained that: McGuire peeped into the bathroom stall where Carrethers was urinating; McGuire stated that Carrethers "liked" her and kept smiling at her; McGuire winked at her, blew kisses at her and acted provocatively toward her; and McGuire mocked and belittled Carrethers in the presence of her co-workers and superiors. DN 1 at 4. To investigate the allegations, the Army appointed an investigating officer pursuant to its regulations. DN 57-6. As part of the investigation, the officer interviewed fourteen employees who worked with Carrethers, McGuire, and Cathell. DN 57-7 at 4. In sworn statements, all of them denied having witnessed any harassment of Carrethers. *See* DNs 57-8, 57-9, 57-10, 57-11, 57-12, 57-13, 57-14, 57-15, 57-16, 57-17, 57-18, 57-19. As a result, the investigating officer determined that Carrethers had presented "no substantiated facts" to support her allegations and concluded that Carrethers was "abusing the system to cover up her inability to perform assigned duties at her current grade." DN 57-7 at 4.

In March 2014, Carrethers was presented with a Notification of Proposed Removal which alleged she had made unsubstantiated and inappropriate remarks against her supervisors. DN 58-5.[2] She was ultimately removed for that reason on April 9, 2014. DN 58-6. Following her removal, Carrethers instituted an appeal with the Merit Systems Protection Board ("MSPB"), alleging that her removal was retaliatory. DN 57-25. Ultimately, the MSPB upheld her termination on January 6, 2016. DN 58-7. On February 2, 2016, Carrethers filed suit, naming the Secretary of the Army in his official capacity.[3] Her complaint asserts violations of Title VII of

---

[2] Carrethers had been previously reprimanded for making unfounded statements against her co-workers and supervisors, though unrelated to the subject matter of this litigation. DN 57-23 at 2–4. In that letter of reprimand, she was specifically warned that "[a]ny future infraction may result in a more severe disciplinary action including removal from the Federal service." *Id.* at 4.

[3] The complaint names "John H. McHugh, Secretary, Department of the Army" as defendant. DN 1 at 1. McHugh resigned his position in 2015. Mark T. Esper has filled that position since 2017. Therefore, the Court will direct the Clerk of Court to appropriately modify the case caption.

4

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Whistleblower Protection Act ("WPA"), as supplemented by the Whistleblower Protection Enhancement Act ("WPEA"), 5 U.S.C. §§ 2302 *et seq.*, and challenges the decision of the MSPB.

IV.     **Discussion**

As an initial matter, the Secretary attempts to revive an estoppel argument that he has previously conceded was inapplicable. Moving past that and addressing the retaliation claims, the Court finds that the Secretary has put forward evidence of a legitimate, nondiscriminatory reason for terminating Carrethers's employment which she has been unable to rebut. As a result, the Court will grant summary judgment on the Title VII claim. Finding that Title VII preempts the WPA/WPEA claim, the Court will dismiss that claim as well. Finally, in light of the first two holdings, the Court finds that the MSPB did not act arbitrarily and capriciously and dismisses that claim.

A.     **Estoppel**

The Secretary asserts that Carrethers's EEO settlement estops her from litigating any matters included in her EEO complaint. The settlement stated that Carrethers "agrees to waive her right to pursue administrative or judicial action in any forum concerning the matters raised in the subject complaint and any related grievances . . . ." DN 13 at 2 (sealed). However, it explicitly "does not apply to" her MSPB case. *Id.* at 3.

At the motion to dismiss stage, this Court dismissed all claims relying in part on an estoppel argument. *Carrethers v. Sec'y of the Army*, No. 3:16-CV-62-CRS, 2016 WL 4132497 (W.D. Ky. Aug. 3, 2016). Specifically, the Court determined that a retaliation claim was a "related grievance" which was waived by the EEO settlement. *Id.* at *3. However, on appeal, the Secretary conceded in his brief that the holding was error:

5

> Part of the basis of the court's decision was that the suit was barred by Carrethers' earlier settlement agreement. (Id. at #169-70). As discussed, the United States concedes that Carrethers' settlement agreement does not bar the claims Carrethers pursues in this case because the present claims relate (despite her inartful pleading about the earlier events in her Complaint) to alleged incidents not covered by the agreement. Accordingly, the Army does not argue that Carrethers' claims are barred—simply that her Complaint was factually deficient and thus failed to state a claim upon which relief could be granted.

DN 60-10 at 14–15 (emphasis in original). The Sixth Circuit, relying in part on that concession, reversed and remanded the case. *Carrethers v. Speer*, 698 F. App'x 266, 271 (6th Cir. 2017).

Now, the Secretary asks the Court to "decline to consider" any matters that were covered by the EEO complaint. Since the Secretary has already conceded that the retaliation claims raised by this lawsuit are not covered by the previous settlement, the estoppel argument carries no force, regardless of the Court's original opinion on the merits of such a defense.

### B. Title VII Retaliation Claim

Title VII's anti-retaliation provision prohibits discrimination against an employee or applicant who "has opposed any practice made an unlawful employment practice by [Title VII], or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In proving a case of retaliation, a Plaintiff may demonstrate the retaliation through either direct or circumstantial evidence. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010).

#### i. Direct Evidence

"Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action." *Id.* (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008)). "Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (citations omitted). For that reason,

actions or statements of an employer which reflect a clearly discriminatory or retaliatory attitude are required. *Compare Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 577 n.7 (6th Cir. 2000) (finding direct evidence of discrimination where a university president allegedly said, "[w]e already have two black vice presidents. I can't bring in a black provost"), *with Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (finding no direct evidence of discrimination where a manager expressed "concern about the potentially detrimental effect on business of having an African American comanager").

Carrethers argues that her case can be made with direct evidence because it is uncontested that she filed complaints with her employer and was fired as a result of those complaints. At first glance, it seems an attractive argument, as the Secretary has admitted it terminated Carrethers for the content of her complaints. DN 58-5 at 1 (letter terminating Carrethers for "[m]aking unsubstantiated and inappropriate remarks against your first-line and second-line supervisors."). However, adopting that argument would make termination resulting from filed complaints *per se* retaliation regardless of the veracity of the complaints, which is clearly not supported by the law. *See e.g. Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 256 (6th Cir. 2008) (making false complaints is a legitimate, nondiscriminatory reason for adverse employment actions); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (to fall under the umbrella of protected activity, a plaintiff must have "a reasonable and good faith belief" that the acts opposed were Title VII violations).

Carrethers certainly disputes the Secretary's claims but at a minimum it is clear that the termination letter is not direct evidence of retaliation since it explicitly alleges falsity. A dispute over veracity vitiates the availability of direct evidence because the factfinder must draw inferences and weigh creditability. See *Merritt*, 120 F.3d at 1189 ("Evidence that . . . is subject to

7

more than one interpretation does not constitute direct evidence."). In a more straightforward case, an employer's action or statements stemming from an investigation could reach the standard of direct evidence. *See Id.* at 1190 (finding direct evidence of retaliation when the company president said "[y]our deposition was the most damning to [the company's defense in a sexual harassment] case, and you no longer have a place here at [the] Company."). However, that is not this case and Carrethers must rely on circumstantial evidence to prove her claims.

### ii. Circumstantial Evidence

Where proof is made by circumstantial evidence, the court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny. Under the *McDonnell Douglas* paradigm, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of retaliation. *Id.* at 802. Afterward, the burden shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the alleged retaliatory action. *Id.* "To satisfy its evidentiary requirement, the employer need only *articulate* an acceptable explanation for its actions; the reason given need not be convincing." *David v. ANA Tel. Network, Inc.*, 208 F.3d 213, at *4 (6th Cir. 2000) (table op.) (citations omitted).

The plaintiff must then "be afforded a fair opportunity to show [by a preponderance] that [the employer's] stated reason for [the retaliatory action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. The plaintiff may demonstrate pretext by showing that the alleged legitimate, nondiscriminatory reason "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." *Fuelling*, 284 F. App'x at 254 (citations omitted) (alterations in original). Despite the burden-shifting framework, "the ultimate burden of proving that the defendant intentionally discriminated against the

8

plaintiff remains with the plaintiff at all times." *Wrenn v. Gould*, 808 F.2d 493, 500, 500 (6th Cir. 1987) (citation omitted)

A prima facie case of retaliation requires a showing by a preponderance: "(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* (citations omitted). This initial burden is "easily met." *Id.* (citations omitted). It is undisputed in this case that the Secretary was aware of the activities Carrethers claims were protected and that the Secretary took an adverse employment action against Carrethers. It is a close call whether Carrethers could demonstrate sufficient evidence that she participated in a protected activity and that her termination was caused by her participation in such an activity.[4] However, assuming *arguendo* that Carrethers can make her prima facie case, the Secretary has produced evidence of a legitimate, nondiscriminatory reason which Carrethers cannot rebut.

As briefly discussed above, *supra* (IV)(B)(i), terminating an employee for making false complaints is a legitimate, nondiscriminatory reason for an adverse employment action. *Fuelling*, 284 F. App'x at 256. In this case, Carrethers made repeated allegations of discrimination and harassment. However, no other employee was able to corroborate her allegations. In contrast, many employees actively disputed her allegations. Some even noted in their sworn statements that Carrethers had developed a reputation for making false statements. *See* DN 57-9 at 2

---

[4] The issue essentially devolves into whether Carrethers's allegations were "not so devoid of factual support as to be patently unreasonable," *Wasek*, 682 F.3d at 469, and whether her complaints were the but-for cause of her termination, *Univ of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Such issues are inherently factual. At this point, with the Court taking the facts in the light most favorable to Carrethers, it is likely she would survive the initial hurdle of a prima facie case.

(Carrethers presence "caused me and my team to refrain from brainstorming in our work area and relocate to different locations, to prevent Ms. Carrenthers' [sic] from submitting false statements to leadership about her employment."); DN 57-13 at 2 (Carrethers "repeated accusations and false truths have made it very hard to work around her within TAG. It makes for a very scary work environment when she is in the vicinity because you never know what she is going to make up next."). As a result, Carrethers had been disciplined multiple times for making false complaints.

While Carrethers deposition standing alone and in direct opposition to all other evidence may survives the low hurdle of putting on a prima facie case, it is not sufficient to demonstrate pretext. Carrethers was unable to find even one scintilla of other evidence that her allegations were true. It strains credulity to believe that every employee who worked with Carrethers was complicit in some conspiracy to harass and retaliate her. In the face of such myriad evidence, no reasonable juror could find for Carrethers and, therefore, the Secretary is entitled to summary judgment.

### C. Whistleblower Protection Act/Whistleblower Protection Enhancement Act Claim

The WPA/WPEA prohibits government officers from retaliating against employees or applicants "because of any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences any violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8)(A)(i). However, when dealing with issues of employment discrimination, the WPA/WPEA is displaced and preempted by Title VII. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."). *See also e.g. Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011) ("Insofar as [a federal employee] complains of discrimination and

associated retaliatory conduct, his exclusive remedy is provided by Title VII"). As a result, Carrethers's WPA/WPEA claim is preempted and must be dismissed.

### D. Merit Systems Protection Board Review

The Civil Service Reform Act permits "mixed cases" where "an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (italics in original). *See* 5 U.S.C. § 7703(b)(2). On the discrimination portion of the case, the Plaintiff is entitled to trial *de novo* by the Court. 5 U.S.C. § 7703(c). The non-discrimination portion is reviewed on the administrative record an may be set aside only if found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §§ 7703(c)(1)–(3). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

Plaintiff argues that the MSPB erred in finding that she could be removed from her position for filing her complaints, rehashing the same arguments she makes in relation to her Title VII retaliation claim. However, as already discussed in-depth, Carrethers was terminated for making false complaints, which is a legitimate, nondiscriminatory reason for her termination. This was also the finding of the MSPB. As a result, the Court cannot say that the MSPB acted arbitrarily or capriciously or that the determination was unsupported by substantial evidence. Therefore, the Secretary is entitled to summary judgment.

## V.      Conclusion

Title VII's anti-retaliation provision is designed to protect employees who reasonably and in good faith report harassment or discrimination. However, an employer is not obligated to continue employing someone who has repeatedly abused that system. In this case, the Secretary terminated Carrethers because it found that she was doing just that—making complaints without a reasonable, good faith basis to support them. She has been unable to provide any evidence to indicate that the Secretary's decision was pretextual and has not demonstrated any error in the well-reasoned opinion of the MSPB. Therefore, the Court will grant the Secretary's motion for summary judgment in all respects.

A separate order will be entered in accordance with this opinion.

May 31, 2019

Charles R. Simpson III, Senior Judge
United States District Court